Judge Underwood,
delivered the opinion of the court.
This case is a continuation of a controversy, involving the merits of conflicting claims to the same land, which commenced shortly after the formation of the state goverment, between John Craig, who devised to Beard, and the ancestor of the appellees. Craig having departed this life in 1802, an attempt was made to revive the suit, which had been instituted by him, in the name of Beard, his devisee. This court, in 1814, decided that it could not be done; see III Bibb, 377. This decision probably gave rise to the passage of the act of 1815, (I Dig. 55,) authorizing revivals by devisees in certain cases. After the decision in III Bibb was rendered, Beard filed an original bill against Russell’s heirs, m which he makes the record and proceedings in the suit instituted by Craig, and the proceedings on his part, in attempting to revive it as devisee, parts of his bill, and prays to have all the benefit which can legally result from these proceedings. lie moreover exhibits the entries, &c. on which his equity is based, and prays that the appellees may be compelled to relinquish their legal title, founded on the elder grant.
The defendants by their answer, resist a recovery upon all the grounds assumed, and moreover, rely on an adverse pessession, continued from 1782.
The following is the entry upon which the appellant claims the land in controversy:
“John Craig enters one thousand acres on the southeast side of the Hanging fork,joining William Craig’s, on the lower, and John Craig’s on the upper side, June the 2d, 1780,”
*222 The claims referred to in the above entry, are settlements and pre-emptions previously entered in the names of William and John Craig respectively; and are in the following words:
“February 9th, 1780, William Craig enters four hundred acres, by virtue of a certificate, &c. lying on • the Hanging fork of Hick’s river, on the east-side of the said branch, three miles from Logan’s, to include-his improvement.”’
“June 1st, 1780, William Craig enters a pre-emption warrant of one thousand acres, adjoining his settlement upon the Hanging fork of Hick’s river, to include the said fork, running south-east for quantity.”
“February 9th, 1780, John Craigenters four hundred acres, by virtue of a certificate, &c. lying on a small branch of the Hanging foik of Dick’s river, about three-fourths of a mile from said fork, on the east s>de, and two miles from Logan’s, to include his improvement.”
“June 1st, 1780, John Craig enters a pre-emption warrant of one thousand acres, joining his settlement on the east side of the Hanging fork of Dick’s river, and Logan’s on the east, and to run up and down the said fork, and south-east for quantity.”
It is contended by the appellees, that the foregoing entries want that legal notoriety and precision, which are required to render them valid; or if possessed, then, that they have not been correctly surveyed; and when correctly surveyed, the land in controversy will not be included by them. No one can read the evidence and doubt the notoriety of the Hanging fork of Dick’s river, Logan’s and John Craig’s improvement, at the date of the entries. Indeed these objects were notorious some time before, and there could have been no difficulty in finding any of them when the entries were made. The improvement of William Craig is not so well established; but we are of opinion, that the calls in his settlement entry, for the improvement, the Hanging fork, and the distance from Logan’s, in connexion with the testimony relative to the notoriety and identity of the improvement, are such, that no subsequent locator could have failed by reasonable diligence to ascertain the position of the claim. Therefore, we regard Wil- *223 Jiam Craig’s settlement entry, of four hundred acres, sufficiently established.
The proper manner of surveying the four hundred acre entrys of William and John Craig, admits of no difficulty. John’s should be surveyed in a square, running to the cardinal points with the improvement in the centre. The case of Clinkingbeard vs. Kenny, II Bibb, 512, furnishes the rule for surveying the entry of William. The Hanging fork should be made the base of the suney, which should be extended at right angles from the general course of the stream, south-eastwardly, running the south-western, and northwestern boundary lines, so as to include the improvement equidistant from each, and throwing the survey into a square as nearly as can be done. After laying down William Craig’s four hundred acres, his preemption is to be laid down adjoining it. To do this correctly, is a matter of some perplexity. Upon it, will depend in a great degree, the confliction between John Craig’s treasury warrant entrj of one thousand acres, when properly surveyed, and the land granted to the ancestor of the appellees. It appears from all the plats returned in the cause, that the general course of the Hanging fork, in passing by all the foregoing entries, is from south-west to north-east, or nearly so. This will require the lines of William Craig’s four hundred acres, in running out from the stream, to go nearly a southeast course. The consequence in reference to the manner of surveying William Craig’s one thousand acres is, that there is precisely as many, and as strong reasons for surveying it below his settlement as above it; for in either case, if the stream is crossed, and a line located on the western side, in order to comply with the call to “include the fork,” the survey may be then completed by adjoining the settlement, and running south-east for quantity from that end of the line, west of the fork, most distant from the settlement. There is nothing whatever, in the entry, which can decide whether it was the intention of the locator to adjoin the settlement on the one side, in preference to the other. And whether the pre-emption shall lie above or below, it would equally comply with the entry, to extend it around the settlement, so as to bind on the south-eastern boundary thereof, provided such extension was required. This uncertainty is fatal to *224 William Craig’s pre-emption, unless it can be surveyed in a manner different frbm either of the modes suggested. The call in the pre-emption entry is to adjoin the settlement, and to include the fork. The settlement adjoins the fork on the eastwardly side of it. Now as tiie fork is to be included, why did not the locator intend to lake that part Of the fork which adjoined h.s ,-ettlement? We perceive no reason why the pre-emption may not include that part of the fork, unless it be, that by doing so, and then to run southeast from the ext: emities of a base line, located to the west of the stream, there would be danger of running upon, and including part of the settlement. The locator certainly never intended to make his pre-emption interfere with his settlement right, and such an interference could not be tolera! ed.
But this may be avoided, and we think ought to be, py rurmjng }ines south-east from the extremities of the base, located to the west of the stream, so far above and below the settlement, as to give the quantity of one thousand acres, by a line running at right angles to these, excluding the quantity embraced by the settlement, and which will he included or surrounded by the pre-emption. Surveying the pre-emption of William Craig in this manner, it will assume the shape Which we have laid down on the plat returned by Wilson. and designated by the letters W X Y Z surrounding the settlement, and wí.ich, when properly surveyed, will assume the shape marked on the same plat by the letters STU V. Surveying the pre-emption in this manner, will comply with every call, of the entry. It will preserve the rectangular figure, always deemed importaint where it can be done; the fork will be included by touching it at one point, as in the case of Black vs. Botts, I Bibb, 94; and upon the base line, the survey will run south-east as required; see Swearingen, &c. vs. Smith, 1 Bibb, 95; and the settlement will he adjoined on all sides. That the locator intended to secure the land lying across the creek opposite his settlement, is somewhat evidenced by the fact, that he actually included it by survey. This however, is an argument which weighs very little, if any, as his intentions, unless expressed in the entry by intelligible words, cannot be grounds of relief. If the *225 entry is good at all, it must be surveyed in the manner thus pointed out.
Entry maybe invalid tor uncertJintJ-
Kincaid., for appellees.
It is not necessary to consume time, by inquiring into the proper-mode of surveying John Craig’s tion. It is sufficient to remark, that it cannot approximate the pre-emption of William Craig, nigher than it has been laid down on Wilson’s plat.
Then, by surveying William Craig’s pre-emption as above directed, (and unless it be thus surveyed, it is invalid for uncertainty,) ft will be found upon calculation, that the vacancy between the claims of William Craig and the settlement, and the pre-emption rights of John Craig, -is so largo, that John Craig’s treasury warrant -entry when surveyed, binding on the Hanging fork, as it must do, and extending out with the claims called for, so far that a line parallel to the general course of the stream will include the quantity, cannot reach the land claimed and possessed by the appellees.' It results, that the court correctly dismissed the bill of the appellant. This view of the case supersedes the necessity of noticing the other points presented.
"Wherefore, the decree is affirmed with costs.